All right, here you hear you hear you dishonorable appellate court of the second district is open pursuant to adjournment. The Honorable Susan Bayer presiding. Please be seated. We're honest. First case in the morning called people in the state of Illinois versus Brian Sandowski to 11 10 42 on behalf of the one on behalf of the F. A. Welcome back to J. That's Mr Hoffman. It's good to see you back again. And it's nice to see you. I haven't seen you in a while. Here we have Mr Sadowski. Your Honor, I conferred with my opposing counsel a little bit about this. I think it was last week. Wasn't it? There's been a couple of minor developments legislatively that might have some impact on this case. The first is that, unbeknownst to me, and I plead guilty to this about a month before I filed my brief, the Legislature amended the code to provide that sentences in child pornography cases shall be consecutive. The 584 was amended to soak. Of course, they wouldn't apply to my client in this case because his conduct arose in December of oh nine. Um, and the other matter is greater recency. And that was a house bill numbered 2647, which amends the child pornography statute to provide actually adds a sentence to the effect that the possession of each individual film, videotape, photograph or other similar visual reproduction or depiction by computer in violation of this section constitutes a single and separate violation. I guess that's been read twice, but we can't seem to find any more status on that. So it's just been appears to be probably in response to explain. Well, you know, I think that would be a fair inference. Maybe something else. But, um, in McSwain, the court directly said the General Assembly can change the law if they still choose. And apparently did. Well, they haven't yet. Apparently they're attempting. Well, I mean, I think it was two things I draw from this from my point of view, and that is, as regards to consecutive sentences, you know, when you're in a mandatory world, um, you know, it creates kind of a problem. The old law was always that consecutive sentences were to be imposed sparingly. And, of course, you know, the mandatory nature of things kind of destroy some of that. But one way of preserving some of that old law is that we shouldn't be, um, atomizing conduct into much smaller units or otherwise we get this exaggerated penalties. And, of course, you know, the pending legislation, um, would tend to suggest that the legislature thinks that this has to be addressed. And in other words, the law is right now in need of change. And it's as we say it is not as my opponent says it is. Well, and the issue that has been raised, I'm trying to find it here because I've downloaded the case. It seems to be that they're trying to rein in the sources as well as the distribution of these types of pictures or this type of material, and they're hoping, you know, consecutive sentences and individual separate offenses might do that. That's not necessarily that wasn't a lot of the time that this was decided. Hmm. Um, I have a little trouble. We get a little screen. You're talking about computer technology and digital stuff because I'm a little dog is a little old and, you know, I'm a little bit of a Luddite, you know, but here goes. I mean, if we were, I think my opponent's view of this is kind of kind of stuck in like 1985 in a way, because, you know, if we were if we were back in the day, if you wanted to produce someone wanted to produce a pornographic image to have to use 35 millimeter film and then some of the cases law reveals guys who go off to a commercial, you know, developer like the Walgreens and you have to have you took the risk that you're going to be revealed to the authorities or you had to get a dark room and you had to get chemicals in that. And so producing the image, the hard copy image was, you know, that there was very valuable item. And in addition to that, and this is kind of crucial. If a person had that image and they wanted to trade it or sell it, you lose it. It's gone. So, um, but that's not true in a digital age, because if a person has a digital copy on a computer, in a sense, they have a whole lot of copies because you can rename and put in different folders and then someone could transfer that image to many times as they wanted. So that's the way it is in a digital age. And my opponent seems to be conceiving of this it's a duplicate counterfeit $100 bill that has value that is an aggregation of our accumulation of the original one. And now you get $200 worth of services instead of just the one. But if Mr Sadowski were trading these images and he had these two identical images, I don't think anyone would give him two different images for his two identical ones. And we could, of course, exaggerate this. Let's say he had 10 images. He's not going to get 10 different ones. But one of the points in between was that and that also involved computer digital saving an image. There was no evidence in that case of separate copying of the image upon receipt here. They're in separate folders, so doesn't give that give rise to an inference that he access it twice, not once. So he, in other words, he possessed it. As we said in Guma, the accessing and controlling of the image. Um, I mean, it appears that it happened at least on two occasions where he accessed and controlled that image and saved it in separate folders, correct? You know, that's true. But see, I see the way this case was trying was that the charges are that he is in possession of three images named. Well, you have to insert some balls, young, big girl, and they are stored in the server in San Jose, California with embassy. And he's not directed. I mean, there's not charged with having possessed anything on his camp. I mean, on his phone. So it's Anderson. Andrew is, in fact, nothing on the phone. Okay, so, um, I'm not familiar with a blank one crime argument where the court says that the offender is actually guilty of, like, two possessions or two crimes because what we've convicted the man of this one come um, then that's charged. And there's a very good represents that. But there's this other one that was potentially out. We could have this one. Maybe they could have charged him with possession of an image on the phone. It's a continuing. Your argument, then, is it's a continuing act of possession. You can't have. You can't be charged and convicted. For example, a gun. You're in constructive possession of a gun because it's in your home and then go to your home and you pick up the gun. You're in actual possession. You can't be charged with two counts of UW. It's only one count because it's one continuous possession. Is that your argument as well? Well, that's a pretty good statement of it. I'd like to think of it more along the lines of say, an controlled substance like pills, like ecstasy tablets. And he's got like a little box and there's like 10 of them in there. And unless if the code doesn't say if the code doesn't treat a certain weight or quantity of pills in a different way, then then it's one active and the prosecution can't say you've committed 10 crimes because you've had 10. You've got 10 pills and that's what we have here. I mean, with the pills, you can actually, you can use one, you can give it to somebody else, you can give it to somebody else that that could create a problem. But here, do we know if anything could happen with these photos once they're up in this storage area? Could anybody else access them? Could somebody take them out? Could somebody look at them? I suspect, well, this might be a gathering. I mean, was there any evidence that I guess that's the issue. I think that this was, it was like, it was like a password. It seemed that, you know, then there was, he had access. Of course, it was discovered by the monitor for him, Buzzy, and they had, but that's, that would be a constant in any of these cases that, you know, someone's going to have access to police that, you know, the content of the server. But I think this was his alone. Although in Kandor, I'm not absolutely sure. But do we know, I mean, I think the, the exec, the CEO of the company testified, but I don't think anybody really asked him. Once these get into these folders, if I wanted to go look at them, could I go do that? And I don't think anybody asked him that, did they? No, they didn't. But I said, I suspect that that would not be true because otherwise he, he, he's kind of giving them away. And so your argument about, you know, if you had two similar images and you wanted to trade them for something, we don't know that he wants to do any trading. We just know that he has these three folders that have two distinct images. The third folder has one of the original, one of the original two, correct? That's what we know here. Three folders, but only two basic pictures charged in disaffect. Yes, yes, yes. You know, I'm kind of on board for their argument in large part that, you know, that that we should look at this through the lens or the viewpoint of the victim. Um, and then the victim is haunted by the fact that he or she knows that someone is out there and deriving this perverse pleasure and looking at this abuse. And there's this kind of a privacy element that's being invaded. But that measure of that harm is the image, not a duplicate of the image. If there's another image, as I can kind of concede, if there is another different image, then, then there is harm there. And like there's discussion in their brief of the Lamborn case, but I think those images, if you look closely at the decision, were different. And in the Davidson case, I think the Pennsylvania case, it appears as though the images were different. There were a lot more images involved in that case. And let me ask you this is your position that if you have one image, a young group, young, big girl, 1, 2, 3 or whatever. And if I download that image on Monday, put it in a file up in the cloud, then on Tuesday, I download another of the copy of the same thing. And on Tuesday, then I store it in the cloud. Am I possessing it twice or once? It's the same image. I'd say that's one crime. If you put it in another media, now we're talking like you're talking to somebody else, but it's on your same hard drive. If I retain it on my cell phone, the cell phone was his first medium of storage, right? If I retain it on my cell phone, and then upload it to the cloud, but I keep it on my cell phone. Okay. Then is it is it one or is it two possessions? I'd say this. Let me put it this way. It's a lot closer to than this. It's a different media. It's a lot closer to where they want to be. It's a different medium of storage. That's the key. Okay. In the definition section of the Child Pornography Act, the definition for the picked by computer is subparagraph five. And it is any program or data that after being processed by a computer, either alone or in conjunction with one or more computer programs results in a visual depiction on a computer monitor screen or display. So it's, it seems to say that each that's each each time you access the image would appear to be a separate offense. Well, what's interesting about that? Yeah, it would seem to suggest that that's correct. I'm reading along with you. I haven't read. If this from what I understand from the technology is that if someone has an image, they actually have two images anyway, because it's very difficult to delete the image. And so it's like a compressed digital trail of the image. So that one image is always two anyway. So we live in this world of like, double vision, I guess. And I don't think that can be the law because it's kind of absurd. And the act actually also contemplates multiple possessions. Because when you're when you have possession of more than one of the same film, or depiction by computer raises a rebuttable presumption of an intent to disseminate. So that would seem to go the other way, that it gives rise to an inference of intent to disseminate, but doesn't mean it's a separate offense. Well, as Justice Hutchinson suggested, we're kind of we're dealing strictly with possession. And if, of course, if they were if they were at liberty to like, you know, an intent to disseminate or an actual dissemination, or a reproduction, because I think reproduction is prohibited, too. So in other words, this is strictly a possessive, a possession case. And if I can speak frankly, you know, my impression of this is do they really need this power? Does the prosecutor really need this power? Brian Sadowski is small potatoes, when it comes to child pornography. And so is Mr. McSwain. Mr. McSwain, in a way, was one of the unluckiest guy in the world, because he got this email from somebody, and it had all these images, and he didn't have to do anything. In addition to just clicking on and opening up the email, there was all this stuff there, five images, I gather, and they're all different. And, and, and that could have impressed the court that it was one episode. And perhaps his chief crime is that he just didn't get rid of it, because he certainly didn't look for it. Now, I can see that my client is looking for it, but even in amongst that class of offender, he only has two, I'm arguing two prohibited images. And part of the problem with their argument about this, like multiple possessions between the phone and the server, is that they're suggesting as though he was editing these images. They saw the image on the phone, and may I speak just a little more? I just one more point to make. He looked at these images on the phone, and he said, oh, that's a juicy one. I'm going to keep that one. But there's record evidence to suggest that that wasn't the case at all, because he, I believe he told one of the police officers that he didn't like the images because they depicted girls who were too young. And if you, if the court looks at People's Exhibit 4, it's about an eight and a half by 11, you know, piece of A lot of those girls are fully clothed. There isn't anything remotely lewd or pornographic about him at all. So he was, so I'm thinking that maybe he did this as a batch. Yeah, I don't think the phone was kind of like a kind of an autopilot, just loading a lot of things, or he wasn't paying adequate attention to what he was doing. And so he never really knowingly possessed some of those images. I can see I'm out of time unless the court has any more questions. You'll have time for rebuttal. Thank you very much. Good morning, Your Honor's counsel. I don't want to cut you off. I'm sorry. Please support. Yes, but I have a question. The problem here seems to be and I've had this in other cases. One little tiny word any on the Supreme Court recently agreed with me on a zoning case that any meant exactly that anything. Well, here, what does it mean? Possession of any? And that's the language of the statute. Is it one? Is it 10? Is it 20? What is it? I think that's the key. And that's why McSwain was wrongfully decided. And this goes somewhat back to a question you asked earlier. As I said in my brief, McSwain was based upon Carter and Manning and what Carter and Manning say. Carter and ambiguous. And therefore we use the rule of validity because we cannot determine what the legislature meant when it said any. That's totally different based upon the 1988 L. A. Supreme Court case of Giver, where they said quite frankly that the legislature's purpose in enacting the statute to effectively prevent and control sexual abuse and exploitation of Children. To do so, the legislature intended to prevent not only reduction and dissemination of child pornography, but also its possession. It went on to my court here in page 6 to 7 of my brief in prohibiting without restriction possession of child pornography. The legislature is sought to dry up the final and most important link in the distribution of child pornography. And then I have a long quote. They go on and note that child pornography is worse than abuse or prostitution in that it's not an event. You have these pictures that are hanging around forever. Your question was, well, what if he didn't intend to disseminate? That's not the purpose. The L. A. Supreme Court has said it's dangerous to have this stuff hanging out in someone's possession because at any time it could be disseminated. But he only according to this evidence and you know, it could. I understand the Giver and I understand the legislative issue, but we're talking about this evidence. He has three files and two pictures that how does charging him with two separate offenses at this time rather than you know what may happen in the future? How does charging him with two separate offenses for the same picture accomplish the legislative purpose? Uh, and the policy. Let's compare him to folks. And as Justice Burkett alluded to the definition, clearly the computer programs which have each one of those pictures, even the two that are the same qualify as triggering events. Even if he had done one of those, they clearly do under the definition. What if I had? What if Mr Sedell? These were done all on the same day, correct? But at different times, but at the same day. And we know that the one act, crime says any separate over act regardless of how closely related. But to go to your question, let's say Mr Sedell ski did not have these separate computer images but had three photographs and two of them were the same. Well, I could give the one different photograph to you, Your Honor. I could give one of the same to Justice Burkett and one of the same that Justice Spence. And that's the purpose that Giver says. We don't want these things hanging around to be distributed with the computer. You don't need two separate photographs to give it to. You could, Mr Hutchinson and myself. You can distribute it from from one image. And, you know, I didn't mean to interrupt you, but I understand that concept. But nobody asked the question of what can happen to these. The evidence here is that he possessed these. That's what he was charged with. And he put them in three different files, even though there are two different pictures. Nobody said, Well, can anybody access that? Can he take those out again? What can he do with those? We don't know. I mean, why? Why should I assume certain facts that aren't here in evidence? Uh, I don't. I'm not quite sure. I agree with you, Your Honor. And quite frankly, I'm unsure. But I think the person who testified about the that this was his file and Mr Sadowski had access to this. So as long as Mr Sadowski has access to it, he can go in and then bring them out and do what he wants with them. I mean, he can print them. He can send them to someone else. But that's not what he's charged with right now. No, he's charged with possession. He's charged with possession. Giver teaches that the purpose of charging with possession is that you can't. You don't want these things disseminated. The Giver said the legislature sought to dry up the last most important step in dissemination. Let me ask you this. The the act, unlike the UW by a felon statute expresses what they're referring to when they say any because some period a one small room almost one through seven list, um, the prohibited images they list them what they are. And if you look at that provision, it says any child depiction by computer of any child in any activity described in sub paragraph one through seven of paragraph one. So any child. So in other words, if it's the same child, different acts, different poses, then there's separate charges. If it's the same act, the poses different versus same act with a different child, that's a separate charge. But here we have the same act, same child, same image. So it's not any other child. It's the same child, same depiction, but more than one image. I don't read that section as limiting. It seems to me the crucial language here based upon Manny and Carter and McSwain is the any language defining the criminal act. And as I've said, if you look at McSwain and it quite frankly, it clearly wants to follow Pennsylvania v Davidson. It we can't because of Carter and Manning. But it was unaware of Giver. Giver quite plainly says that this is different. It's not like possession of weapons. It's not like possession of a controlled substance. Um, and so again, I'm going back to what I said. Those cases were based upon the ambiguity of any. And in Giver, the Illinois Supreme Court has said the purpose of this act is not ambiguous and therefore we don't have to go to ambiguity and use the rule of validity. Which someone brings up and I want to touch on House Bill 26 47 as Justice Hutchinson noted. We really don't have to go there yet because nothing's been done with it. As a matter of fact, as I discussed with Mr Wilton this morning, I went on again this morning and looked at the Illinois homepage. Uh, there are no transcripts yet. This bill was introduced on February 21st. The most recent transcript is February 20th. There has been some short debate when they referred it to the rules committee that went to judiciary. There is an indication that on March 19 there was a floor amendment added. But again, I don't know what that amendment is. But for the purpose right now, even assuming that it was in response to McSwain, it has not happened. We don't know what it is. Plus this court, we know what it wants to do. We know what it wants to do. And it's exactly what McSwain said it should do to to tighten up this statutory authority. Uh, that's true. But that does not tell us whether it changed the law or clarified the law. If your honors want to look at see a lot of the law and you know, I don't want to quote the cases. I want to have a look at them. But a case from this court says when you have something that's ambiguous and then they make an amendment, that's an indication that it was a clarification, which is what happened here. It's ambiguous. There are other cases saying the presumption is when they change because of a ruling, there's a but that's not a binding presumption. It can be. And this court and the L. R. Supreme Court has set out three three methods, three examples, three ways to tell whether it was meant to change or whether it was meant to clarify. So simply because they did it in response doesn't mean it wasn't a clarification. Wouldn't a clarification or a modification if there was a set of facts in the interim still require us to look at the statute as it's written and apply it to this set of facts that's before us and that would be done using the rule of lenity? No, you would not use the rule of lenity because again in Giver, the L. R. Supreme Court said it's clear. It's not like Carter and Manning. They didn't say it's ambiguous, ambiguous. They said it's clear. Second of all, no. If it's a clarification that tells us even more, that's another way of statutory interpretation. And that tells us they meant to clarify what they meant originally was what they now say in the amendment. When discussing Giver, I'm familiar with Giver. Giver involved depictions of different Children, not the same child. The photographs were different boys engaged in the acts of sexual penetration with Mrs Giver, not the same child. And if you when you read the statute, it says any child engaged in any and depicted in any of the various seven types of images, any child. And then if you look further in the act, the simultaneous possession of multiple multiple copies of the same image gives rise to a presumption, rebuttable presumption of intent to disseminate. Doesn't that suggest that the act is targeted at protecting individual Children? And then when you get multiple possessions of the same depiction, you can be charged with this dissemination. Well, yeah, I think this defendant could have been charged with reproduction. Yes, I think that supports the people's position here that that because dissemination, as they said in Giver, the same reduction is a separate offense from possession. Reproduction is a separate offense. Yes. But I thought you just said that it's it's it's a presumption of intent to disseminate. And they said in Giver what they're trying to do is prevent to cut off the dissemination. So it doesn't matter if it's the same child. And I would say you protect a child by by preventing the dissemination of 1000 of 10 of 100 of the very same picture. You're protecting that same child, but you still have 100 photos out there that can be disseminated. And that's what the Illinois Supreme Court said the legislature didn't want. Is it your position that if it's the same photograph, and it's if it's copied, made it two copies are made of that same photograph at the same time. Now, that's not exactly what we have here. But if it's like a click and drag and you copy it into two folders at the same time, is that one possession or two? The same time is is and exactly the same time. And if it was into the same folder, it would be a very difficult question. But as I've set forth in my brief courts, although no court I found in Illinois has addressed it, but courts from other jurisdictions have said, First of all, if it's in different media, then it's different. Second of all, if it's at different times, then it's different. Same time, same time and same media. There would be a very different question. I would say the way to parse that would say, well, can it be the same time? Can it be so closely related? And I guess if you're saying if I took a picture and put it in a Xerox and push 10 and it went 10 10 10 10 10 10 10, that would be a very close question. But I would come back. Let's go back to the digital age, though. And if if you if you're doing like a click and drag on your computer and I'm copying it from one folder to two separate folders, but I'm doing it at the same time. Is that so? The same image is at the very same time is going into two separate folders. Is that is that one possession or two? I would say because it's two folders, it's two possessions. Now, if you did it to one folder, if you did somehow did like 10 copies to one folder, that would be a close question. I would say that would probably be one, although going back to Giver, uh, you could delete one of those and still have nine. So come and call it up and disseminate it. And dissemination is the ultimate problem here. So from here, you're well, one of the one of the things that that McSwain mentioned was that the state had presented no evidence that the steps upon receipt. So your perspective, then, is that the distinct steps thing really doesn't matter, right? Oh, no, I think the distinct stuff has time. You had one step. You said he clicked, right? And that's my thing. And that's I argue that this case was different than that. Because also, if you remember in McSwain, not only did was it all at the same time, but this email was not like oftentimes you get emails and there are case in McSwain. If you look McSwain, the pictures were part of the email. All they had to do was open the email and then scroll down and they were all there. It's not like here where you go in and download this picture or download that picture. Or even if you got an email and had to open up separate attachments to it. So you're saying with every click of the mouse, if it's which would be a distinct step, right? Every click of the mouse is a different possession. With every download, I would say, even if you download the same picture, that would be a separate position. Would you agree that it could be arguable that you could say, well, rather than every click of the mouse, defining a distinct possession, you could define it by like a session where I'm I'm logged into the cloud for a four minute session. However many I transfer during that time of the same image, it would just constitute one possession. Would you agree that that's an arguable point? No, no, I would. I would compare that to, say, a home invasion. I, uh, it's one home invasion. I stabbed person. I stabbed person. I stabbed person. See, those are separate. This is the same image, so it's not different image. Okay, so I stabbed person 85 times and we know that in the indictment, it separates those out. That is not one act. One of the convictions here. Thank you. Thank you. Mr Welcome. Um, just one point that might address inquiry by Justice Spence. It would seem to me that in your scenario where we're clicking and dragging and we're putting things on the same different folders, the same hard drive. That's I would just because otherwise we have this stopwatch view of what another crime is. And given the speed within that we have in the digital age with reproduction, that's just unreasonable. If you put it on another media, then that kind of suggests that he's trying to preserve it in case the one is lost. He might not have confidence that the one storage facility is secure. So I can understand that. But in your scenario, we're just clicking and dragging, using the same media to store it. I would say the devil reproduced offense is one problem. It's the same media. That's the critical factor. Yeah. Okay. Thank you. There is a question here of punishment for this offense and policy. And how is and I'm still having some trouble with this. How is punishing him twice for the same image affecting our impacting policy? How is it going to accomplish the policy of drying up the sources and drying up child pornography? He, you know, we're punishing him twice. I mean, we have one image and one image alone that can be disseminated, but we don't have any evidence that it will be. We don't have any evidence right now that it can be seen by anybody else. I mean, this isn't a case where we have additional evidence. So how is this one particular image in two separate files, two separate offenses? And obviously that's not your position, but that's how you know, how do you specifically deal with that argument? Other than to say it all happened at one time, but we have two pictures. Well, I'm thinking of, um, I guess this is a controversy in federal courts where that some of the people, the folks, girls depicted in images is one who has a pseudonym of Amy and she intervenes in this litigation and seeks restitution. Um, if that happened in this case, and let's say that the girl is named Amy appropriately enough. Um, I don't see how a court would give her like double damages for the same image because there have been two of them or treble damages because there were three. If there are two, as Justice Marquette pointed out, are different images. Okay, now that would be a basis, a separate basis for restitution. So in other words, I think that law enforcement is getting the bang for its buck. It's getting that deterrent effect by treating the duplicate image as a as one because that's the way it would be for the victim. If she, if she were like to suing, would you agree that the defendant could have been charged with reproduction of the image from what I gather? Yeah, I think he could. He didn't reproduce the image, but it was the same image. So it's not a possession charge. It's a reproduction charge. Yeah. All right. All right. Maybe it would be a dissemination charge to the San Jose if you had enough of those images. Yeah. In other words, maybe this is just a charging or maybe this is like this is couldn't charge the six counts, but it was only charged to three and strictly specific. The way I read the way I read the statute is sub paragraph two. The defendant with the knowledge of the nature of the content thereof reproduces the image. That's a separate charge. He doesn't have to reproduce it and show somebody else if he reproduces it on his own medium. That's a separate charge. He's got two copies and he only had one at the beginning and then it creates another one. That's reproduction. Mhm. Well, I in this pretty, I think one of the reasons they charged in this way is because he told police that the phone didn't have the storage capacity. So he kind of had to resort to this other unit. Uh, and that's just and and it was in fairness. They charged that way because the phones didn't have any images. Are there any other questions? No, thank you. Thank you very much. I thank you counsel for your argument. We will make a decision in due course. I guess we now stand recess. Thank you. Actually adjourned.